The case of Morgan Hill v. California Education is submitted on the briefs, and we'll proceed to argument on Padilla v. ICE. LOREN BANGUM Good morning. May it please the Court, my name is Loren Bangum on behalf of the government. I'd like to attempt to reserve four minutes for rebuttal, please. As a preliminary matter, does the government have a position on the motion to stay? Thank you, Your Honor. We oppose the motion to stay. We see the issues that are presented in the thursdigium petition for certiorari that was recently granted as distinct from the issues in this case, so we will oppose. Our plan is to do so within the normal time, unless the Court... I just wanted your position. Okay. Unless you want to argue it today. Okay. The district court in this case issued a nationwide preliminary injunction declaring 8 U.S.C. § 1225 B.1.B.2 unconstitutional and holding that any alien who entered the country unlawfully was placed in expedited removal proceedings. I think we're well aware of what the district court did. Can we begin by your telling us if the government's position is that individuals in this class can be detained indefinitely with no promise of a bond hearing? Yes or no? I don't think that's the issue in this case. I don't care what you think. I would like a yes or no answer to the question. Well, I think that the Supreme Court has indicated that potentially... If the government's position is on this issue, are the people in the plaintiff's class subject to indefinite detention with no promise of a bond hearing, yes or no? To make sure I understand the Court's question, by indefinite do you mean with no final endpoint? Because... As long as the government wants. Our position is that there is a final definite termination point and that they are subject to detention until that final definite endpoint, which is the conclusion of their removal proceedings. This may depend on the resources available, immigration judges, etc. But the position of the United States government is these individuals can be subject to indefinite detention with no promise of a bond hearing, correct? We would not agree that it would be indefinite when there is a definite termination point. And that is one of the things that the Supreme Court pointed to in the Jennings decision, which involved Section 1225B, which is at issue in this case. Some of the removal proceedings take many years. So your position is that the people in the class can be detained for as long as it takes to get to the conclusion of removal proceedings, which could take five years, sometimes ten? Well, I think that that gets to the test that we've outlined in our brief. And the test that is outlined in the brief is that detention pending removal proceedings becomes problematic when it's no longer in service of those removal proceedings. And there may be an argument at that five or ten year mark that it is no longer in service of those removal proceedings. But I don't think there is an argument on that at eight days of detention, which is what we have here with the bond hearings to be happening within seven days. I also want to say as a preliminary matter— What does the government think would be a reasonable period of time? I think that certainly seven days is a reasonable period of time, which is what we have here in this case. You think it's an unreasonable amount of time? No. Oh, I'm sorry. Did I misunderstand the Court's question? Yes. Well, I think that— What's the government's position on when—what's a reasonable amount of time in which someone can get a bond hearing? Well, again, I'm trying to tie this to the facts of this case as much as possible. And here what we have is an order saying that— Yes, but we're writing a larger slate here. I understand. So, what's the government's position? I think that if we look at Supreme Court case law and if we look at the Ninth Circuit's case law, I think that there is a clear line that says that detention may become prolonged at six months. And that's what we have the Court saying in Zabidas. That's what we have the Court saying, at least, in D'Amour, where the alien in D'Amour had been detained for six months and it was expected to continue. I think that's what we have this Court saying in the Rodriguez line of case law. And I think that seven days is a lot different than the six months that we have those cases in the game. So, if we substitute a six months for seven days, would you agree that the injunction was proper? Well, no, and that gets to sort of the first point that we raised in our briefs, is that Section 1252-F1 prohibits this injunction. And we don't think the Court has to reach the due process questions that are presented in this appeal at all because this appeal can be resolved by a ruling on 1252-F1. And if Your Honors would like, I can pivot to that for the moment. The Court, I'm sure, is well aware of the text of 1252-F1. The Supreme Court has held on two separate occasions that 1252-F1 prohibits class-wide injunctive relief, most recently in Jennings. But there's an exception for individual relief? Correct. So, if the district court in this case had identified every single individual in the class and said they're entitled to the kind of bond hearing she described, what would be the government's position? I think that if the relief order did pertain to individuals, even if it was a very long list of individuals, that that would be permitted by Section 1252-F1. But that isn't what we have here. We have the district court saying this is a facial matter as to the class nationwide with many people who are obviously unidentified. And as to the individual class members, the two bond hearing representatives, they were only in the country for a matter of hours before being apprehended. And so, one of the things, and this is bleeding into our due process discussion a little bit, but that's one of the things that the Court would have to take into account. You would agree that American Arab was not a class action? Correct. All right. And so, in Jennings, the Court remanded that case to the Ninth Circuit to determine whether a class action was appropriate, right? That's correct. So, how do you read those cases as saying that categorically class actions are prohibited? Well, I would point the Court — What would be the point of the remand in Jennings? Well, I think that it's important to note that in that remand of Jennings, the Supreme Court specifically instructed the Ninth Circuit to consider 1252-F1. And then, of course, in Marin, this Court instructed the district court in Rodriguez to consider 1252-F1. So, I think it is a slightly open question in this district — Well, it has to be an open question because the Supreme Court remanded it. Right. But the Supreme Court also said — I'm getting back to your argument that saying that Arab American and Jennings categorically prohibit class actions. I'll quote from the decision, which said that the Supreme Court held this provision bars courts from, quote, granting class-wide injunctive relief against the operation of 1221 to 1232. And that's precisely what the injunction does here. And so, in Marin, which was the Supreme Court's remand of Jennings to this Court, we have the Court saying to the district court, you need to consider section 1252-F1. And it's also important to note that Marin was in a different posture. We're talking about a case that had a permanent injunction as well as the corresponding declaratory relief. As opposed to here, we only have preliminary injunctive relief. And as this Court knows, there's no established preliminary declaratory relief remedy that would be comparable to the preliminary injunctive award that was awarded here. So our position is that you don't even have to reach the due process questions that are presented in this appeal and that section 1252-F1 resolves this with a remand to the district court. So, counsel, I think Chief Judge Thomas's question may be suggesting that the statements in the Supreme Court cases you're addressing should be considered dicta. So we have, by my count, three Supreme Court cases that address 1252-F1 and state that it prohibits class-wide injunctive relief. And that's Jennings, Reno v. AADC, and then McKenn v. Holder. And then, of course, the Sixth Circuit has also reached that conclusion as well as the Tenth. So even if we considered the statements in three Supreme Court decisions as dicta, what sort of deference is this Court required to give to those statements? Even if they are dicta, which we've explained in our brief, even if Reno could be considered dicta, we don't think Jennings could be considered dicta, I think it would still be highly persuasive for this Court. And, obviously, we've pointed to Hamama in our brief as a case that we think is also very persuasive on the interpretation of section 1252-F1. Well, some of our case law states that this Court, as a lower court, is supposed to look at these considered Supreme Court statements as sort of a prophecy of what they will do. Is there anything in the Supreme Court case law that suggests that the Court would find there was jurisdiction for class-wide injunctive relief, despite the language of 1252-F1? There's nothing that I'm aware of, and I think that's a very good point, Your Honor, which is that the Supreme Court has considered this on multiple occasions, and it's never said anything or hinted anything to the contrary. And even in Jennings, which came out a year ago, the Supreme Court is approvingly citing Reno. And so we think that that's very instructive, that there's never been anything to the contrary. So I think, to talk about a couple of other points. It was more of a standing case, don't you agree? I mean, basically, what the holding was in Reno, and the issue was in Reno, was whether organizations could file class actions, and the Supreme Court said no. And then in Jennings, you have a class action that's sent down to the lower court. So we've never had a case where we have a class of people who actually have standing that the Supreme Court has considered. True? I don't think that's right, because in Jennings we have a class that's very similar to the class here. We have a Section 1225B class, and the Supreme Court is considering that in Jennings. So, again, we think Jennings is very instructive. I don't think there's any dispute that the district court did enjoin the operation of Section 1225B and granted relief that contravenes Congress's statutory scheme in Section 1225B. We disagree with the district court's attempts to get around Section 1252F1. We discussed in our briefs, we don't think that Califano v. Yamasaki is helpful here, where the Supreme Court has already interpreted the meaning of Section 1252F1, and that's why the Sixth Circuit in Hamama held that the rule presented in Califano may be true as a general rule. But it does bar class actions in the particular statute at issue, and that is exactly what the Supreme Court found in Reno. And that's a quote from Hamama at page 878. So we've talked about Marin a little bit. We think that Marin is very helpful here. Marin really was focused on discussing jurisdiction for the class action, which isn't the issue that we have in this appeal. The issue that we have here is whether Section 1252F1 bars the injunctive relief. And, again, I just want to highlight that one of the things that the Marin court did was explicitly remand the question of whether Section 1252F1 bars injunctive relief back to the district court. So we also want to address Plaintiff's point briefly about Section 1252E1B, which expressly forbids class actions. Section 1252F1 doesn't expressly forbid class actions. It only limits just this one type of relief. The court also, the district court below, also cited habeas jurisdiction to conclude that Section 1252F1 didn't bar the class action because it lacked a clear statement repealing the court's habeas jurisdiction. The issue here isn't, again, whether the class action itself is barred, just this particular type of relief. And so we would say that the district court misapplied the clear statement rule because habeas jurisdiction isn't repealed. The court never found that it was repealed, so it's inapplicable. And as the Sixth Circuit held in Hamama, there's nothing in Section 1252F1 that prevents any individual from seeking habeas relief, whether injunctive or otherwise. I will move on to addressing the constitutionality of Section 1225B1B2, but I do want to emphasize that the court doesn't have to reach that issue to resolve this appeal. This is where my earlier question comes in. Yes. So one of the things that the district court did was it enjoyed Assume hypothetically, I know your position is to the contrary, but assume that we can look at that in the way you've argued against. Is it the government's position that people in this class can be detained indefinitely, however that's defined, with no promise? You notice I use the word promise. Not right. No promise of a bond hearing. Well, I think that explicitly the statute does not permit bond hearings, and we don't think the Constitution requires bond hearings in the circumstances of this case. And I'm not trying to be pedantic, but I do want to quibble with the indefinite phrasing that you're using, because the Supreme Court has found it, again, Well, you're here arguing that the district judge in this case had no authority to set a seven-day limit. I think that no court has ever found that Section 1225B1B2 detention is unconstitutional after only seven days. But you've told us or inferred that maybe if she had said six months, that would be okay. Again, I don't want to concede that, but I think that that's like the earliest that we've ever seen in the case law that constitutional concerns have been implicated. So that's the distinction that I want to draw, is that certainly we don't have that here. And I think what we have is an attempt to take the prolonged detention framework and sort of squish it into the seven-day time frame. When we know that Congress has provided for mandatory detention of these people, that is what the Supreme Court resolved in Jennings. And so now we only have this constitutional question. And the guidance that we have from the Supreme Court and from this court is that that constitutional question doesn't even become implicated until the six-month time frame. So, again, there's no case law that— Some courts have said one month, right? In this particular context? Yeah. They have said that only after, like, considering an individual habeas. And so that's not been after one month of detention period. I think if I understand Your Honor's question, they're usually saying in these individual habeas contexts, release unless the government provides a bond hearing within 30 days. Historically, what's the longest someone in the plaintiff class has been held in detention? I could not answer that because we haven't had any discovery. This is a preliminary injunction, so I'm honestly unaware. But so far, everyone in the plaintiff class has received a bond hearing because they either received it under matter of XK or once matter of XK was no longer valid, they received it under the preliminary injunction as partially stayed by this court. So, so far, every member has received a bond hearing. So one of the things that we think is— Have we been taking the position still that these plaintiffs have no due process rights at all? I think that Your Honor doesn't have to reach that question. I'm not. I'm asking you. So we've taken the position— We can decide what we can reach and what we can't. I understand. Is it the government's position that the plaintiffs in this class have no due process rights at all? Our position is that they have the due process rights that are given to them by Congress. And we've cited tons of case law in our brief going back many decades to support that proposition. Regardless, I think, though, is that we have this injunction that as a facial matter says that this class of people gets bond hearing at seven days. And so we know that the class is comprised of varying individuals, some who have been here for longer than others, some who have more substantive ties than others. And so when we're looking at this injunction, I think we have to take what the court in Marin did. And in Marin, in remanding it, the court said, and I'd like to quote, it instructed the district to, quote, determine the minimum requirements of due process for each subclass in the remand of Jennings. And I think that's instructive because here with this injunction, the court didn't do that. The court didn't find that as the spectrum of individuals that this bond hearing requirement, this injunction, would be appropriate on that scale of due process. So even—and I'm not conceding this, but— In my recollection, I don't recall that you argued what subclasses would be appropriate before the district court. Am I right? Well, the district court has already certified a class. Yes, I know. But your argument is there should be subclasses. No, that's not my argument. That was a quote from Marin, which had various different subclasses, including different detention statutes. I think the point there is that there is a sliding scale of due process, and the Supreme Court has said on multiple occasions that due process is a flexible concept that takes into account all of the different varying circumstances. And here we don't have the district court doing that and saying that it's— But what are the different circumstances that would affect their due process rights of this class? Because they found that they had a credible fear determination, and they've been detained. What—I mean— So I think if we look in the case law, you know, and we've cited cases that state that for constitutional purposes, aliens who've only made a very brief entry into the United States are assimilated to the status of arriving aliens. So even if we were to take plaintiffs' argument at face value that they get additional due process rights by virtue of their illegal entry into the United States, I don't think that means automatically that they're entitled to the injunction that the district court awarded. Maybe there is some class member that is entitled to that, and I'm not conceding that. I'm saying that for the purpose of argument. But for the class member who's only been in the United States for one minute before they were apprehended, I don't think there's any case law to support the idea that they would be entitled to this injunction. I'm getting very close on my time, and I would like to save the remainder for rebuttal. Thank you. Thank you. Mayor of the Police Court, good morning. My name is Matt Adams. I'm here on behalf of plaintiffs and class members. Can we start with whether the government's statement to us that everyone in the plaintiff class has received a bond hearing, is that accurate? That is correct, that pursuant to the district court's injunction, the class members continue to receive bond hearings. On the procedural basis that Judge Peckham ordered? Not with the additional procedural protections, that those were stayed. So they receive bond hearings. A bond hearing where it was their burden. That's correct, as they have. No requirement of a transcribed hearing, et cetera. Correct, the same bond hearings they've been receiving for the last 15 years under this statute. And what's the longest period in time that any of your clients in the class have actually been detained? Well, because we don't have information on our current class because discovery has not commenced, but I can say that we have class members who were denied bond and who lost or were won before the immigration judge, but then that case went up on appeal, and including those who lost in administrative appeal and then sought judicial review and thus have been detained for literally years. So while the government does not concede that it's indefinite, it is clear that this process often takes years. And, in fact, in the record, the supplemental excerpts of the record talk about the median time frames, and that's on page 124 of the supplemental excerpt of the record. And so just looking at those in the administrative proceedings, the median time frame for our class members to have their case determined by the immigration judge is 173 days, so almost six months. And for those who then are forced to appeal, either they win in the government appeals or they lose in the appeal, the median time frame is just over 11 months. And that does not take into account any judicial review. So on... Of the members of the plaintiff class who have received bond hearings, how many were granted? What percentage were granted release? Just under 50% of the class members were granted a bond, where the immigration judges have determined that they did not present a risk of flight or danger that would require them to be held without bond. And is that roughly consistent with the percentage of bond grant before this litigation took place? To be clear, that's the numbers that predate this litigation, because all we have are the numbers that the government's provided through the fiscal year 2018. I understand. Go ahead. Thank you. What about your specific three clients named in the amended complaint? Have they been released? They have been released. And so two of them were released pursuant to the injunction in the case of Ms. L. So even though they attained a bond hearing, they were denied a bond, but since they were still being separated from their children, the government was ordered to reunite them with their children, and they were released at that point. And the other class member had been released through a bond hearing. Are you still requesting that the courts stay this matter pending the Supreme Court's decision in the recently certified case? I can't pronounce the name. Yes. My best attempt at that is Thurisigam. And in that case, the government makes the same argument, a front and center that they make in this case, which is that individuals who enter the country are not protected under the due process clause, that they only are entitled to the process which Congress bestowed upon them. And we think that is clearly wrong. It contradicts decades of case law. It contradicts the cases that the government has cited. Yet, because the Supreme Court has certified that case and because that question is front and center, we don't profess to have a crystal ball to say where that is going, and that could, in fact, dramatically alter the course of these proceedings. You would agree that that case involves a different class of individuals than is involved in this case, correct? That is correct, and it's very important, because in that case you don't have individuals who were found to have a credible fear. So what does the effect of your request for a stay have on your argument that your clients are suffering irreparable harm? I would say it considerably weakens it. So to be clear, our request for the stay does not indicate from us a request that you stay the relief that this Court and the district court has already provided. That is to say that we're requesting that the status quo, that bonds continue while the Supreme Court reviews Thurisigam. So what we would do per your motion is stay this matter or administratively close it, and the status quo where bond hearings are continuing would remain in effect, but the additional protections that the district court ordered would not be applied to those hearings. Is that correct? That is correct. That is our request. Thurisigam involves, if I pronounced it correctly, involves a different statute, doesn't it? It involves, yes, that is correct, whether it was the suspension of the habeas clause, but it interacts with the same 8 U.S.C. 1225 for someone who had been issued an expedited report. Then why can't we just go ahead and decide the case? And if Thurisigam, the Supreme Court, instructs us differently on issues that touch upon the issues in this case, we have competent counsel on both sides. You can each file your petitions for rehearing and cite the Supreme Court case. Why can't we proceed in that manner? This Court certainly can proceed. Why isn't that a better choice than what your position is for us? In our motion, we only stated the fact that it may later on impact this case, and if this Court is okay with that, then we are certainly welcome moving forward on this case. Well, there's a preliminary issue that is before this Court that would not seem to be affected by this new case, and that is whether the district court had jurisdiction in the first place to enter the nationwide class injunctive relief or whether that was prohibited by 1252F1. And so I haven't heard you say that the application of 1252F1 could be impacted by this case in which the Supreme Court has recently granted cert. That's correct. And so turning to 1252F1, the Supreme Court has addressed various provisions of 1252 and time and time again has held that the language should not be construed to strip a court of authority absent a clear congressional intent that is made with explicit language. But does 1252F1 strip jurisdiction, or does it just limit a remedy because it's captioned limit on injunctive relief? It certainly strips the court of authority to provide injunctive relief. And that contrasts with the very prior subsection, 1252E1B, where in that section, Congress specified explicitly that the reference forms of habeas relief would not be available for our class under Rule 23. And this corresponds to the rule that where, in fact, Congress intends to strip this court of its traditional authority, of its traditional equitable powers, it must do so expressly. And that's one of the things that this court pointed to in Rodriguez in the very first Rodriguez decision and that the Supreme Court reinforced in the Oakland Cannabis Buyers' Co-op, or co-op, is that in order to curtail a court's traditional equitable powers, the Congress must do that with an unmistakable legislative command. Well, the statute says that only the U.S. Supreme Court can issue such an injunction, doesn't it? Yes. The statute says the Supreme Court has authority to issue an injunction even apart from the exceptions clause. And then the statute goes on to expressly provide an exception clause that says that prohibition on injunctive relief does not attach to those who are already in removal proceedings. It doesn't actually say that, does it? I mean, if you read the statute, it says to an individual who has been placed in removal proceedings. And so, you know, we start with the language of the statute, of course, and I don't think anybody disputes that. But as I read your argument, your interpretation would have us strike that language. It would make an individual superfluous. And we would read the statute as if it said any individual or an an individual or a class of individuals, and it doesn't say any of those things. So how do we reconcile the clear language of the statute with your argument that when it says an individual alien in removal proceedings, that should mean a class of aliens? We start off with the general rule that was announced in Califano v. Yamasaki, that the reference in the statute to an individual should not be interpreted as express limitation on individual relief. Now, I take it, Judge Batey, your point is the point made by the Sixth Circuit in Hamama that by saying individual alien, the court interpreted that as requiring a redundancy. But I think that statute is pointing to this bar on preemptive challenges made by individuals or organizations, as we pointed out. So going back to Califano, in that case, the court was considering a statute within the Social Security Act, and it was a statute that granted a right of action. And the court held that it wasn't limited, even if it talked about an individual. And it didn't say an individual taxpayer. It said something a little different, that there could be broader relief. But isn't that different from a statute that explicitly accepts a claim and says that there's a limitation on injunctive relief, no court shall have jurisdiction other than the United States Supreme Court, and a claim challenging the application of these sections of the Immigration and Nationality Act, except for the claim of an individual alien in removal proceedings? So, no, I disagree. I think that it's not providing the explicit language. The explicit language, when you contrast, for example, E1b, which clarifies that relief for the referenced habeas provisions is not available for a class under Rule 23, that is explicit language. But Section 1252f1 doesn't prohibit class relief. So it's different from the section you're citing from Section A, which does. It's a limitation on injunctive relief, which is what the United States Supreme Court said in Reno v. AADC. So why would it say we bar class relief? It doesn't. It allows class relief, but not for class injunctive relief. If its purpose is to enjoin this injunctive relief, it should have stated so explicitly, as it's done to other forms of relief or challenges in that same section. Let me ask you a practical question. Let's assume that there's no injunctive relief, but you get declaratory relief. What's the practical difference? At the end of the day, when we've gone back and gone through discovery and come to our ultimate judgment, there might not be a practical difference. But in the interim, we have thousands of our class members who will not only have been perhaps years, depending on the course of the litigation, but many will then have been deprived of the opportunity to obtain legal representation, to gather the evidence necessary to marshal their case, to present their case before the court, and some to have a genuine opportunity to apply for asylum. So in the interim, it's critical. And I would go back to the point that the government conceded when they were arguing for and responded to Judge Hawkins' questions, saying that if the district court went back and named every individual in the class, then they would the district court would be able to provide, in fact, injunctive relief to those named individuals. And so we could go back to the court. So what the government is saying is, well, as I understand it, nobody even knows how large this class is. It's a nationwide class. No one's even attempted to count the numbers. It's at least tens of thousands of people, if not hundreds of thousands. And if you could bring an action on behalf of each one of them by name, you'd have an extremely large joint action. But under Rule 20, the court would have the authority and would, in fact, be required to treat each claim individually, dismissing each person separately, awarding relief separately, perhaps separate trials, separate orders. So this would be the prosecution of individual claims, correct? I don't believe that that was the government's concession. They acknowledged that if the government produced the class list. The government does have possession of the class numbers. They know these individuals. If they produced us with the list and we went back before the district court and the district court issued an order on behalf of our class, because no one denies the district court has jurisdiction over the class, then ordering individual relief for each person in that order, relief would be available. And I go back to this. We're reading an awful lot into the council's response to the question where they really didn't go into an analysis of Rule 20, which would only allow jointer if claims come from the same transaction or occurrence, and it's practical to do so. And so we're taking a hypothetical and spinning it to the ridiculous that it would be practical for the court to do this so that people who've entered in very far different locations under different circumstances, were apprehended in different ways, make different types of claims for asylum, would all be considered to have claims arising from the same transaction or occurrence. And I think the Supreme Court's language in Jennings v. Rodriguez is instructive as to this point. When they were looking at the apparently broad language in B-9, and the court said when confronted with capacious phrases like arising from, we have eschewed uncritical literalism, leading to results that no sensible person could have intended. So if we decide that 1252F1 does not prohibit the class-wide injunctive relief, that it's permissible, that's allowed under the statute, is it correct that we would be the first court to do so? Because the Supreme Court in three different instances has not said that. It said the opposite. And two other circuits have said the opposite. So I don't understand what we're doing. We'd be venturing into new territory and making a ruling that no other court has made. Is that correct? The Supreme Court has not yet addressed this, right? Well, please answer my question. Is that correct? No, it's not correct. Even in Marin v. Rodriguez, this Court did not simply remand the case, but ordered that the injunction remain in place. But that's different. And that — That's different from what I asked you, which is, did Marin say that you can have class-wide injunctive relief? Because I think, if I understand from reading your briefs and all the cases you've cited, we'd be the first court to do that. No. Marin did order that that injunction on behalf of the class remain in place. Well, it was remanded for the district court to consider it in the first instance. That is correct. And I don't — But it didn't say — I didn't see anything in Marin that said, but we find or we hold that class-wide injunctive relief is permissible under 1252f1. No, but — It didn't say that, did it? It did not. But it did order that the injunction remain in place. And it did state that, in addition, under the habeas statute, that the district court retained authority to provide injunctive relief. And that's an additional basis for the district court to require that. Sure. I don't think anybody disputes that. The government stood up and said the statute doesn't remove habeas jurisdiction. It's just that it's — it would have to be on an individual basis if it's injunctive relief. But there's — the only support the government has for that proposition is that that this express — the requirement that that be done by an express statement revoking a form of habeas relief is the Sixth Circuit's decision in Hamami — in Hamama — excuse me. And as we pointed out, both the Second Circuit and Third Circuit in Lujmakov have found that that would violate the requirement that — that requires an express statement in order to withdraw a form of relief under the habeas provision. May I ask —  A quick historical question. The members of your class who've had bond hearings and have had a result, those were all constructed under the prior to Part A of this injunction. The old rules, if you will. That's correct. The results were unaffected by — by the presence of those rules. That is correct. Okay. Thank you. May I ask about the seven-day requirement? Absolutely. What's the basis of that in the record? Well, if an individual continues to be entitled to a bond hearing, meaning that they have a right to demonstrate that their continued detention is not justified, then they have a right to a prompt bond hearing. As this Court has repeated, Matthews v. Eldridge many times, the due process requires an opportunity to be heard in a meaningful time. Agreed. Why seven days as opposed to 14 or 28? In seven days — now, yeah, seven days conforms and is consistent with case law from this Court, both in the immigration context, like the Saravia case, and in other detention contexts. We looked at civil commitment contexts where the courts that know that the person must be entitled to a hearing under the due process clause no later than the seventh day after they've been apprehended. In the criminal context, it's even more expedited. Of course, that's under the guidance by the agency, and the agency itself has emphasized the expedited nature in regulations like 8 CFR 1003-47K. And I would note that that very regulation, which emphasized the expedited nature of the bond hearing, allows the government at that bond hearing in exceptional circumstances to move for a brief continuance if, indeed, there is an issue determining the identity or there's a security risk. And I'd also note that in looking at this, the seven-day period, it's less stringent than what this Court ordered in Saravia because the seven days only kicks in once the individual has requested a bond hearing, and they're not entitled to request a bond hearing until after they've gone through the expedited removal process and until after they've gone through the credible fear interview. And even then, many of our clients don't request a bond hearing until after they've had time to look for an attorney. So the government has much more time in this scenario than they do in this case than in the case of Saravia that is consistent with that seven-day time period. What the district court relied upon was the provision that after an alien makes a credible fear or is found to have made a statement of credible fear that or finds that they have not, rather, has denied it, then that decision has to be reviewed within seven days. And that's what I understood the district court to be relying upon. Nothing else that would suggest that seven days is somehow magically tied to the Constitution and it's a constitutional requirement. I don't agree. I think that that was one supporting statute. And she looked at a time frame within this expedited removal process. But the district court was also looking at Saravia and referenced Saravia. And the district court was looking at the regulations, including HCFR 287.3D, in which the DHS, the arresting officer, has to make a custody redetermination after 48 hours. But even with that 48 hours, another regulation, just to connect that, that an individual can ask to go before an immigration judge even before DHS has filed the charging documents with the court, demonstrating, again, the expedited nature or what should be the expedited nature of these hearings. But in contrast, we presented declarations from representatives across the country who talked about individuals waiting weeks and sometimes up to two months in order to get the bond hearing that they had requested. And if these people are, in fact, entitled to a bond hearing, for those for whom it will be determined that their detention is no longer justified, then any delay necessarily and arbitrarily deprives them of their liberty. And the board's own precedent acknowledges that. And we cited, to a matter of my vias peris, where the court said, or rather the board said, if I may, that prompt hearings are necessary because, quote, every day represents an unwarranted delay in their release. Thank you, counsel. Thank you. Your Honors, one of the things that I wanted to address I didn't have a chance to address earlier was parole. The district court enjoined Section 1225B1B2 without considering the nature of the process that is provided for in parole. And Congress – On only humanitarian grounds, correct? Or for significant public benefit. And we attached DHS's current interim parole guidance to our state papers, and so Your Honor has seen that. I wanted to make a practical point with respect to that. By requiring the bond hearings to happen so quickly with the government bearing the burden of proof, it incentivizes aliens to enter the United States illegally because they would then be entitled to greater process than if they properly reported to a port of entry, which is not what Congress intended by making illegal entry illegal. What do you mean by the term proper? Well, if someone were to seek entry, they would be required to go to a port of entry and not enter illegally. Well, they fly here from Venezuela or Colombia on a visitor's visa and they overstay it, and they then apply for asylum. That's proper, isn't it? Well, to come here on a visa is proper, and an alien is permitted to apply for asylum once they are here. But it does contravene Congress's intent in having aliens show up for a port of entry so that the United States knows who's coming, who's going, who's president of the country. Can I ask you another practical question? Has the result of the overall policy that the plaintiff class here is complaining about resulted in the continued detention of families that are separated, children from parents, if you know? I'm not sure that I fully understand the court's question, but Ms. L., which is the litigation in the Southern District of California, is governing all of that. And so I don't believe at this time that there's any interplay between this case and that case. I see that my time has elapsed. Thank you. Thank you. Thank you both for your arguments. If I may, Your Honor, I just want to confirm that the court does indeed want a response from us on plaintiff's motion to stay proceedings within the normal course. Yes, although we would appreciate a little more prompt response because I think we're going to take up the motion shortly. OK. Thank you. We will endeavor to do that. Thank you. Case to start can be submitted for decision. And we will be in recess for the morning.
judges: Thomas, Hawkins, Bade